O’Neall, J.
As the opinion of the Court, finally disposing of the caso, will turn on two questions, arising out of the second ground of the defendant’s motion, viz: 1st, as to the effect of the Ordinary’s discharge : 2d, the legal consequence which results from the release of the third security, Robert Gregg, by the real plaintiffs, it is not intended that even an inference as to the opinion of the Court on the other grounds should be drawn.
1. The case of Trimmier, Ordinary, v. Trail, 2 Bail. 485, 486, 487, had, I supposed, settled this question; but as it is still regarded as not conclusively settled by that case, it will be necessary to re-examine it slightly. Trimmier and Trail* was intended to follow up and strengthen the opinion of the Court in the case of Cureton v. Shelton, 3 M’C. 414. In each case, the power of the ordinary to discharge the securities, was directly involved; and in each it was held, that he could not discharge from an incurred liability. This is, I think, the true construction for the ordinary; and not even the Court of Equity could exercise the right to relieve from a fixed liability, or to divest the rights of parties. In James v. Malone & Hill, 1 Bail. 334-5-6, the defendants, the . securities of Charles Pitts, soon after the execution of the guardianship bond, were discharged by the order of the 'Court of Equity. Judge ISlott, in remarking upon this part of the case, characterizes the order of discharge as “ an extraordinary proceeding;” and concludes that part of the case by saying, “but admitting the sureties to have been legally discharged, they were still liable for any waste committed before that time.” If this be true in relation to the pre-eminent powers of relief possessed by the Court of Equity, much more must it be true when applied to the power of the ordinary, whose jurisdiction is limited, and arising from the act of 1789, which authorizes the securities of an administrator, when they conceive them, selves “ in danger of being injured by such suretyship,” to petition the ordinary for relief, who is thereupon authorized to make such order or decree as shall be sufficient to give relief to the petitioner. The case to be made by the sureties, to authorize the ordinary to interfere, must be that they conceive themselves “ in danger of being injured by such suretyship.” This allegation may arise from two states of facts : 1st, that the administrator has received the funds of the estate, and for *516 w^icb they fear he will bo unable to account and pay: 2d, that he may incur new and future liabilities, for which the securities may become liable. As to the last, the Ordinary may, it is conceded on all hands, “give relief to the petitioner,” by discharging him. But, as to the first, he cannot give that relief; for the rights of creditors and distributees intervene. T o them the administrator and his securities have, by the plain letter t>f their contract, become liable to pay it; and as Judge Colcock said, in Cureton v. Shelton, “there is no power which could releaso'^tho securities from such.” But the Ordinary “ may make such order or decree as shall give relief to the petitioner.” He may revoke the letters of administration, and grant administration de bonis non ; or he may decree that the administrator shall substitute a new security for the discontented one, in a new bond. Either of these courses will give relief to the petitioner ; for, although neither of them may discharge him from his liability to creditors or distributees, yet, cither of them may enable him to seek for and obtain either an entire refunding of all damages which ho may sustain, or a contribution from his subsequent co-surety. In this case, it appears that a new bond and a new security was given, and the ordinary attempted to discharge the defendant; but the Court of Equity has charged the administrator with a certain sum of money, received during the time of the defendant’s suretyship. For this, both the defendant and the subsequent security, Robert Gregg, were liable to the creditors and distri-butees, for the reasons which arc already assigned in this case, and which were assigned in Trimmier v. Trail, 2 Bail. 486. But from the facts in evidence in this case, as between the defendant and Robert Gregg, I think that the latter is liable for the whole default which is charged upon the defendant.
2. The joint and several liability of the defendant and Robert Gregg, for the sum now demanded from the former, having been established, it follows that the release of the latter by the parties in interest, will discharge the defendant. For, if it did not have that effect, the defendant would bo precluded from having his damages refunded, or a contribution made bv Robert Gregg. The rule, however, is very clear, that the release of one of several co-obligors is á discharge of all the others.
The motion for a nonsuit is granted.
Harper, J. concurred.